# SUPREME COURT OF THE STATE OF NEW YORK
## *Appellate Division, Fourth Judicial Department*

900
CA 13-01162
PRESENT: SMITH, J.P., FAHEY, LINDLEY, WHALEN, AND DEJOSEPH, JJ.

---

WILLIAM T. LESIO AND ELEANOR LESIO,
PLAINTIFFS-RESPONDENTS,

V                                          MEMORANDUM AND ORDER

DAVID M. ATTARDI, D.M.D. AND Q DENTAL GROUP, P.C.,
DEFENDANTS-APPELLANTS.

---

ANSPACH MEEKS ELLENBERGER LLP, BUFFALO (DAVID M. STILLWELL OF
COUNSEL), FOR DEFENDANT-APPELLANT DAVID M. ATTARDI, D.M.D.

OSBORN, REED & BURKE, LLP, ROCHESTER (AIMEE LAFEVER KOCH OF COUNSEL),
FOR DEFENDANT-APPELLANT Q DENTAL GROUP, P.C.

DAVIDSON FINK LLP, ROCHESTER (DONALD A. WHITE OF COUNSEL), FOR
PLAINTIFFS-RESPONDENTS.

---

Appeals from an amended order of the Supreme Court, Monroe County
(William P. Polito, J.), entered May 1, 2013. The amended order
granted the motion of plaintiffs to set aside a verdict and ordered a
new trial on liability.

It is hereby ORDERED that the amended order so appealed from is
unanimously reversed on the law without costs, the motion is denied
and the verdict is reinstated.

Memorandum: William T. Lesio (plaintiff) and his wife commenced
this action seeking damages arising from the alleged malpractice of
David M. Attardi, D.M.D. (defendant), an employee of defendant Q
Dental Group, P.C. On May 21, 2008, when plaintiff was 79 years old,
defendant extracted teeth 22 and 23 from plaintiff's lower left jaw.
Those teeth were loose due to periodontal disease, from which
plaintiff had suffered since at least 1995. Plaintiff had already
lost multiple teeth, and defendant was hoping to save tooth 24, which
appeared to be in danger. After extracting teeth 22 and 23 with
forceps, defendant removed the scar tissue and cleaned the sites with
the use of a curette, a knife-like instrument. Defendant then placed
Bioplant — a synthetic material that is used to stimulate bone growth
— into the socket of tooth 23, mixing the Bioplant with plaintiff's
blood. Defendant hoped that the Bioplant would restore and preserve
the bony ridge adjacent to tooth 24. Defendant placed gel foam over
the Bioplant to secure it in the socket, and closed the socket with a
suture. Plaintiff returned to the office for several follow-up
examinations, and his mouth appeared to be healing normally.

Approximately four months after inserting Bioplant into plaintiff's mouth, defendant examined plaintiff and observed that a large piece of bone was extruding from the gum area in his lower left jaw.  Plaintiff informed defendant that, while at home, he had pulled out an even larger piece of bone from his mouth.  After determining that the bone was necrotic, defendant cleaned the area, prescribed antibiotics for plaintiff, and instructed him to see an oral surgeon immediately.  Plaintiff saw an oral surgeon eight days later, and tests showed that plaintiff had contracted actinomycosis, a rare bacterial infection.  Plaintiff continued to be seen by an oral surgeon and an infectious disease specialist for more than a year, but the infection spread to plaintiff's jaw bones.  He later underwent two surgeries to remove necrotic bone, leaving his face disfigured.

At trial, plaintiffs alleged that defendant was negligent in: (1) inserting Bioplant into an infected site; and (2) failing to debride the socket of tooth 23 before inserting Bioplant.  The jury rendered a unanimous verdict in favor of the defense, finding that defendant was not negligent.  Plaintiffs thereafter moved to set aside the verdict pursuant to CPLR 4404 (a), contending that the verdict was contrary to the weight of the evidence.  Supreme Court granted the motion and ordered a new trial.  We now reverse.

"A verdict rendered in favor of a defendant may be successfully challenged as against the weight of the evidence only when the evidence so preponderated in favor of the plaintiff that it could not have been reached on any fair interpretation of the evidence" (*Krieger v McDonald's Rest. of N.Y., Inc.*, 79 AD3d 1827, 1828, *lv dismissed* 17 NY3d 734 [internal quotation marks omitted]; *see Alger v University of Rochester Med. Ctr.*, 114 AD3d 1209, 1210; *Lenhard v Max Finkelstein, Inc.*, 225 AD2d 1101, 1101, *lv denied* 88 NY2d 806).  "Where a verdict can be reconciled with a reasonable view of the evidence, the successful party is entitled to the presumption that the jury adopted that view" (*Schreiber v Univ. of Rochester Med. Ctr.*, 88 AD3d 1262, 1263 [internal quotation marks omitted]), and the trial court "should not set aside [a] verdict unless it is palpably irrational or wrong" (*Pecora v Lawrence*, 41 AD3d 1212, 1213 [internal quotation marks omitted]).

Here, we conclude that it cannot be said that the jury's finding that defendant was not negligent is palpably irrational or wrong.  With respect to the first theory of negligence, plaintiffs asserted in their posttrial motion that, because his infectious disease specialist testified that Bioplant should not be placed in an infected site, and defendant admitted that periodontitis is an infectious disease, it necessarily follows that defendant was negligent and the verdict is therefore against the weight of the evidence.  The trial court agreed with plaintiffs' analysis, but we do not.  As an initial matter, we note that defendants' expert witness testified that chronic periodontitis is not an infectious disease.  Nevertheless, even assuming that it is so, we note that the infection for which plaintiff was treated by his infectious disease specialist and which caused the loss of his jaw bone was not periodontitis; rather, it was actinomycosis, and there is no evidence in the record that plaintiff

had actinomycosis when defendant placed Bioplant into his mouth. Indeed, plaintiff's infectious disease specialist acknowledged at trial that he does not know when plaintiff contracted actinomycosis.

Moreover, plaintiffs' expert witness testified that, in his opinion, the infection "began following the insertion of the Bioplant." In other words, according to plaintiffs' expert, the Bioplant caused actinomycosis. If that is true, it stands to reason that plaintiff became infected after defendant placed Bioplant into his mouth, which is contrary to plaintiffs' first theory of negligence. We also note that plaintiffs' expert acknowledged that, "with appropriate precautions being taken," it was within the accepted standard of care to place "graft material into a site that has periodontitis," even immediately following the extraction of a tooth that is pulled due to periodontitis. Defendants' expert went further, testifying that placing Bioplant into the socket of a tooth that has been removed due to periodontitis is the "ideal" way to use the bone graft material. Based on the above testimony, the jury could reasonably have rejected the proffered theory that defendant was negligent because he placed Bioplant into plaintiff's mouth when he suffered from periodontal disease.

Plaintiffs' remaining theory of negligence is based largely on semantics. The instructions for Bioplant state that, before inserting the bone graft material into a patient's mouth, the treatment provider should "[d]ebride the socket or treatment site." Because defendant admitted several times at trial that he did not "debride" the tooth socket before inserting Bioplant, plaintiffs conclude, ipso facto, that he was negligent. Defendant went on to explain, however, that, in his view, debridement is defined as the "removal of necrotic tissue," and that, because there was no necrotic tissue in plaintiff's tooth socket, there was no need for debridement. Defendant further testified that he performed "curettage" of the socket by using a surgical instrument to scrape, clean and remove tissue in the socket after the tooth was extracted. Defendant also irrigated and sterilized the area where Bioplant was to be placed. Notably, defendants' expert witness testified that defendant's cleaning of the area "is consistent with debridement" as that term is used in the Bioplant instructions. "Where, as here, conflicting expert testimony is presented, the jury is entitled to accept one expert's opinion and reject that of another expert" (*Ferreira v Wyckoff Hgts. Med. Ctr.*, 81 AD3d 587, 588; *see Radish v DeGraff Mem. Hosp.*, 291 AD2d 873, 874), and, unlike the trial court, we perceive no reason to disregard the testimony of defendants' expert.

Inasmuch as the evidence does not "so preponderate in favor of plaintiff[s] that the verdict could not have been reached upon any fair interpretation of the evidence" (*Finnegan v Peter, Sr. & Mary L. Liberatore Family Ltd. Partnership*, 90 AD3d 1676, 1677), we conclude that the court erred in setting aside the verdict as against the weight of the evidence (*see e.g. Brongo v Town of Greece*, 98 AD3d 1260, 1261; *Lauria v Downey-Goodlen El. Corp.*, 63 AD3d 1561, 1561-1562).

Finally, we conclude that there is no basis in the record to support the court's alternative finding, made sua sponte, that the verdict should be set aside in the interest of justice on the ground that the jury rushed its verdict to avoid deliberating on Christmas Eve day.

Entered:  October 3, 2014                    Frances E. Cafarell
                                             Clerk of the Court